Scott SHIPMAN, St. Charles County Assessor, Appellant,

v.

DOMINION HOSPITALITY, Respondent.

No. SC 85905.

Supreme Court of Missouri, En Banc.

Oct. 26, 2004.

Rehearing Denied Dec. 7, 2004.

Charissa L. Mayes, Office of St. Charles County Counselor, St. Charles, for Appellant.

James P. Gamble, St. Louis, for Respondent.

PER CURIAM.

The St. Charles County Assessor ("assessor") appeals a judgment of the circuit court affirming a decision of the State Tax Commission ("STC") to set aside the assessor's commercial classification of real property located in St. Charles, Missouri, known as TownePlace Suites—Marriott ("property"). The STC reclassified the property as "mixed-use," sixty percent residential and forty percent commercial, and assessed the property at $416,810 residential and $468,000 commercial. After opinion by the Court of Appeals, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is reversed.[1]

The record shows the following: Dominion Hospitality, LLC ("Dominion") owns the real property located at 1800 Zumbehl Road in St. Charles, Missouri, known as TownePlace Suites—Marriott. Dominion advertises and operates this property as an extended-stay residential facility. It also accepts guests for short-term stays of less than thirty days. The property has

---

1. Portions of this opinion are taken without further attribution from the majority opinion of the Court of Appeals and from the dissenting opinion of Hon. Lawrence Mooney.

ninety-five residential units, each of which has a full kitchen and an individual telephone line with voice mail. There are laundry facilities on the property for the use of the occupants of the units. Dominion also provides housekeeping services to each unit three times per week. Upon arrival, each guest signs a registration card in which the guest agrees to stay at the property for the number of days indicated on the card. In return, Dominion agrees to provide housing space for them for that period. Those who indicate on the registration card that they intend to stay for thirty days or more are billed at a lower rate than guests who indicate that they will stay for a shorter period. The registration card also states that a person who agrees to an extended stay but departs early is subject to paying a higher daily cost for his accommodations.

The undisputed fair market value of the property in 2000 was $3,656,226. The assessor classified it as commercial property, which is assessed at thirty-two percent of its fair market value. Dominion appealed this classification and assessment for tax year 2000 to the St. Charles Board of Equalization, which affirmed the classification of the property as completely commercial on July 25, 2000. Dominion timely appealed to the STC in August 2000, asserting that the property was misclassified.

An evidentiary hearing was held before a hearing officer of the STC on July 2, 2002. Dominion presented testimony and documentary evidence concerning the use of the property in 2000. This included several computations of actual use by residents and guests. All of these computations of use compared the number of days of long-term stays to the number of days of all stays. These computations did not include any units that were not occupied.

Assessor did not introduce any evidence, but did cross-examine Dominion's witnesses.

Based on the evidence presented before the hearing officer, the STC found that the property was not used primarily for transient housing, but rather was used for residential and commercial purposes, with the residential use being sixty percent. The STC concluded that where use by permanent residents makes up a substantial portion of the use of property, section 137.016.4, RSMo Supp.1997,[2] requires allocation of the assessment between residential and commercial use. The STC further concluded that the transient housing exclusion of section 137.016.1(1) should not apply in such circumstances. The STC set aside the classification of the assessor, reclassified the property for tax year 2000 as sixty percent residential and forty percent commercial, and assessed the property for tax year 2000 at $416,810 residential and $468,000 commercial. Assessor appealed the order of the STC to the circuit court, which affirmed the decision of the STC. This appeal followed.

■ On appeal, this Court examines the underlying decision of the administrative agency, here, the STC, and not the judgment of the trial court. *Psychcare Mgmt., Inc. v. Dept. of Soc. Services,* 980 S.W.2d 311, 312 (Mo. banc 1998). This Court is limited to a determination of whether the decision is supported by competent and substantial evidence upon the entire record, or whether it was arbitrary, capricious, unreasonable, unlawful, or in excess of the STC's jurisdiction. *Id.*

Assessor contends that the STC erred in holding that the property should be classified as a mixed-use residential and commercial property because the property is

2. All statutory citations are to RSMo Supp. 1997.

primarily used for transient housing and, therefore, it is not residential property as defined in section 137.016.1(1). This Court agrees.

Section 137.016.1(1) defines "residential property" as

> all real property improved by a structure which is used or intended to be used for residential living by human occupants, vacant land in connection with an airport, land used as a golf course, and manufactured home parks, *but residential property shall not include other similar facilities used primarily for transient housing. For purposes of this section, "transient housing" means all rooms available for rent or lease* ....

(emphasis added).

█ This statute requires that the hotel be classified not by its use, but rather its availability for use. In its definition of "residential property," the legislature has made plain that the benefits of this designation shall not flow to "facilities used primarily for transient housing." And "transient housing" is defined as "all rooms *available*" for short-term occupancy. *Id.* Although property is generally classified by its use, that rule has no application here where it is not its use, but rather its *availability* for use, that the legislature has specified must determine a property's classification. Thus, because here all the hotel rooms were available for short-term occupancy, the clear language of the statute compels the denial of the hotel's quest for residential classification.

Furthermore, the statute forbids a mixed-use classification under these circumstances. Although mixed-use classifications of property are generally permitted under section 137.016.4,[3] the legislature has made an exception as to facilities used "primarily" for transient housing in its definition of "residential property." Sec. 137.016.1. To the extent there is a repugnancy between classifying property as mixed-use or by its primary use for "transient housing," the chronologically later specific disqualification of subsection 1 would prevail over the earlier more general provision of subsection 4. *Laughlin v. Forgrave*, 432 S.W.2d 308, 313 (Mo. banc 1968). Therefore, if, as here, a facility makes more than half its rooms available for short-term occupancy, the property is entirely disqualified from a residential classification. Thus, the property's classification is dependent on whether its facilities are primarily available for short-term occupancy, not on what percentages of use might be ascribed to short-term and extended-stay occupants.

For the foregoing reasons, the judgment is reversed.

WHITE, C.J., WOLFF, STITH, PRICE, TEITELMAN and LIMBAUGH, JJ., and BLACKMAR, Sr. J., concur.

RUSSELL, J., not participating.

---

**3.** Where real property is used or held for use for more than one purpose and such uses result in different classifications, the county assessor shall allocate to each classification the percentage of the true value in money of the property devoted to each use; except that, where agricultural and horticultural property, as defined in this section, also contains a dwelling unit or units, the farm dwelling, appurtenant residential-related structures and up to five acres immediately surrounding such farm dwelling shall be residential property, as defined in this section.