Scott SHIPMAN, St. Charles Assessor, Appellant,

v.

DNS ELECTRONIC MATERIALS, INC., Respondent.

No. ED 90597.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 2, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 9, 2008.

Application for Transfer Denied Nov. 25, 2008.

Charissa L. Mayes, St. Charles, MO, for appellant.

Joel D. Brett, St. Charles, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Scott Shipman, the St. Charles County Assessor ("Assessor") appeals from the judgment of the circuit court that reversed the decision of the State Tax Commission of Missouri ("STC") and ordered the Assessor to base any future assessments on the property of the taxpayer, DNS Electronic Materials, Inc. ("Taxpayer"), on the appraised value established after appeal in 2001, consistent with section 137.345.5 RSMo 2000.[1] We affirm the judgment of the circuit court reversing the decision of the STC.

Taxpayer has a manufacturing facility on several parcels of property totaling approximately 188 acres in St. Charles County ("Property"). The Property consists of industrial office space and buildings for manufacturing.[2] In 2001, Assessor appraised the value of the Property at $13,448,870. Taxpayer appealed to the St. Charles County Board of Equalization ("BOE"), which adopted the valuation of the Assessor. Taxpayer appealed to the STC, which valued the property at $3,906,595 for the years 2001–2002.

At the STC hearing on the 2001–2002 valuation, Taxpayer presented the testimony of a state-certified appraiser, Thomas McReynolds ("Taxpayer Appraiser"). Taxpayer Appraiser testified that he had appraised the Property in May 2002, using the comparable sales approach and the cost approach, relying principally on the former. He concluded the valuation of the taxable Property was $5,440,000.[3] There was also evidence part of the Property had been classified as agricultural, and the Hearing Officer found that the fair market value of the total Property had to be adjusted for this, and accordingly deducted $1,580,575.

The Hearing Officer found that the evidence presented by Taxpayer was substantial and persuasive enough to rebut the presumption in favor of the BOE's assessment. He concluded that this evidence established the true value in money as of January 1, 2001, after deductions and adjustment for the non-taxable portion and the parcels classified as agricultural to be $3,906,595. The decision of the Hearing Officer ("2001 Decision") was not appealed further by Assessor.

Assessor reassessed the Property for the years 2003–2004, and valued the Property at $12,034,890. The BOE affirmed the assessment. Taxpayer appealed. Taxpayer and Assessor both presented evidence, which included testimony and reports from Taxpayer Appraiser and Charles Arginas ("Assessor Appraiser"), who appraised the Property for Assessor. Taxpayer Appraiser's valuation was identical to his valuation for 2001–2002, and relied principally on the comparable sales approach. Assessor Appraiser relied principally on the cost approach and determined that the true value of the taxable portion of the Property was $38,000,000.[4]

---

1. Unless noted otherwise, all further statutory citations are to RSMo 2000.

2. Part of the Property is classified as "agricultural" rather than "commercial."

3. This valuation did not reflect that part of the Property, which consisted of several parcels of land, was classified as agricultural and so had a lower value.

4. Taxpayer Appraiser also calculated the true value of the Property using the cost approach, but stated that he considered the comparable sales approach to be a better indicator of the true value. Assessor Appraiser also applied the comparable sales approach to valuing the Property, but stated that he considered the cost approach to be more accurate than the comparable sales approach, due in great part to the lack of truly comparable sales of real property similar to the Property.

The Hearing Officer found Taxpayer's evidence to be persuasive, and found Assessor's evidence to be not persuasive. He also found that the Assessor did not comply with section 137.345.5, which mandates that:

> In **every instance** where a taxpayer has appealed to the board of equalization or the state tax commission the assessment of the taxpayer's property, real or personal, and **that appeal has been successful**, then in the next following and all subsequent years **the basis upon which the assessor must base future assessments** of the subject property **shall be the basis established by the successful appeal and any increases must be established from that basis.**

(Emphasis added). The Hearing Officer stated that "[a] negative inference is so drawn to the extent that in light of the mandate of Section 137.345.5 no presumption can exist that the Assessor's or the Board's value of $12,031,000 is correct." He noted that there was a further negative inference against the Assessor's Exhibits, based on the Assessor Appraiser's failure to acquaint himself with the 2001 Decision, and that Assessor should have brought the 2001 Decision and the terms of section 137.345.5 to the Assessor Appraiser's attention. The Hearing Officer set aside the assessed valuation of the several parcels that constitute the Property, and determined that the true value in money for the years 2003 and 2004 to be $3,868,080.

Assessor appealed to the STC for a review of the decision and order of the Hearing Officer. The STC reviewed the record of the hearing. The deposition of Assessor was also made a part of the STC record. In this deposition, the Assessor addressed how his office used the 2001 Decision as a basis for the assessment for 2003 and 2004. He repeatedly stated that his office did use the 2001 Decision as a basis, but then applied their own assessment tools, such as "internal ratios, goodness to fit statistics, and adjust[ed] it accordingly for fair market value and uniformity throughout the county." Assessor conceded that the 2003–2004 valuation was more than three times higher than the true value of the Property as determined by the STC in the 2001 Decision. Assessor also testified that there had been no new construction of improvements to the Property since the valuation date of January 1, 2001, and that his office assumed from its records that there was no change in condition of the Property between January 1, 2001 and January 1, 2003. Assessor denied that he disagreed with the STC's valuation in the 2001 Decision, and would not opine that the Property was unfairly assessed in the 2001 Decision. He stated that his office increased the true value of the Property for 2003–2004 over that established in the 2001 Decision "based on economic data."

The STC reviewed the decision of the Hearing Officer and set it aside. It found that neither the income approach nor the sales comparison approach were reliable indicators of value for the Property, noting that the sales used by Taxpayer Appraiser were "too remote in time and location to provide persuasive evidence of value." It found that the cost approach used by Assessor Appraiser was correctly applied and supported the opinion of value of Assessor and the BOE, while that used by Taxpayer Appraiser was not a reliable indicator of value. The STC found that Taxpayer failed to meet its burden of proof that the value placed on the Property was excessive, unlawful, unfair, arbitrary or capricious. The STC discussed section 138.060.1, finding that the use of Assessor Appraiser's report, which valued the Property at $38,000,000, did not violate the former statute where that report did not advocate a higher valuation, but was used to support the Assessor's valuation. It

also analyzed section 137.345.5 and its application as follows:

> ... In his deposition, [Assessor] testified repeatedly that he has used the [2001 Decision] as the basis for his value for tax year 2003 but that a multitude of factors, including sales, pointed to the fact that the 2001 decision understated the value of the [Property].
>
> In [Taxpayer]'s post trial brief, it concedes that the 2001 decision does not freeze the market[,] but [Taxpayer] would read Section 137.345.5 to require the Assessor to use the same methodology used by the [STC] in the previous decision.
>
> We cannot read Section 137.345.5 so restrictively. It is clear that the legislature wants the Assessors to give due regard to [STC] decisions. However, once the Assessor has considered the [STC] decision, nothing prohibits the Assessor from raising value if he or she determines that the prior [STC] decision does not represent market value for the tax day in question.
>
> The [STC] strives to produce the best decision it can based upon the information provided. But where—as in our 2001 decision—one party fails to present evidence, we would be remiss in holding that our decision was infallible. When either party comes upon better evidence of market value, it is our duty to consider same. And, in the case of the Assessor, it is his duty to provide same to us.
>
> Likewise, the methodology used in a prior decision is not necessarily binding upon the Assessor. There are three generally approved methods for determining value, all of which may be applicable in a given situation.

The STC ordered that the decision of the hearing officer be set aside, and affirmed the assessed values approved by the BOE.

Taxpayer appealed to the circuit court. The circuit court found that section 137.345.5 controlled the disposition of the case. It found that the Assessor did not follow the statutory mandate and base the 2003–2004 assessment of the Property on the valuation established in the 2001 Decision, and did not "consider" the prior BOE and STC decisions "other than to flatly reject them." The circuit court also found that the STC did not follow the statutory mandate. It noted that the Assessor testified that he did look at the 2001 Decision, considered it a base value and then reappraised the Property, "in relation to similar properties and other sales in the market to determine its 'market value' and to 'adjust to be uniform and consistent throughout the county.'" It noted that "[o]n that 'basis' and not the one prescribed by statute, the Property was appraised at more than three times its 2001/2002 value." The circuit court noted that Assessor and the STC admitted that there were no improvements to the Property, no rezoning thereof, and no change in its use between 2001 and 2003. It further noted that the Assessor opined that the more than tripling of the property valuation indicated that "they 'possibly mismeasured' or 'just missed the value' of the Property in previous assessments and that 'the basis of the 2001 value suggested that the prices per square foot of those properties were far below what was uniform, standard and typical from a sales standpoint in St. Charles County.'" From this testimony the circuit court found that the Assessor "rejected rather than relied on the 2001 valuation of the Property." It found that there was nothing in either the Assessor's testimony or methodology, adopted by the STC in making its ruling, that would explain "the extremely different valuations in the Property in back to back assessment cycles and shows that the

Assessor worked from or adjusted the Property's 2001 valuation basis."

The circuit court criticized the STC's legal analysis, and noted that there were no reported cases in Missouri construing section 137.345.5. It found that Taxpayer had successfully appealed the valuation of the Property in 2001, and the fact that Assessor had failed to present expert testimony for the 2001 Decision was not relevant, and "certainly should not be considered as a factor which would advance [Assessor]'s argument in this case." The circuit court further found that Assessor had a ministerial duty following the successful appeal in the 2001 Decision, pursuant to section 137.345.5, to base future valuations of the Property on the assessment in the 2001 Decision. It noted that despite this statutory duty and the "basis" established in the 2001 Decision "upon which all assessments and increases must be established[,]" the Assessor tripled the assessed value. The circuit court further observed that in the appeals of the 2003 assessment, the Assessor presented appraisal evidence "that was available but not produced in 2001," to justify the change in valuation.[5]

The circuit court concluded that the attempt of the Assessor and the STC to change the basis established in the 2001 Decision was contrary to law, and that the STC's finding that the Assessor had a professional, ethical, and statutory responsibility to reappraise and revalue property in every tax assessment cycle had no basis in law. It concluded that "[t]o require the Assessor to so act would ignore the mandate of Section 137.345.5 with the result

that [Taxpayer] and all other successful tax appellants would be unfairly burdened by the need to perpetually file appeals concerning their property valuation." The circuit court concluded that the STC's decision upholding the 300+ percent increase in the valuation of Taxpayer's Property was not supported by competent and substantial evidence on the whole record, and was contrary to and a misapplication of Missouri law. It ordered Assessor and St. Charles County to base any future assessments of the Property, consistent with section 137.345.5, on the appraised value established in the 2001 Decision, and to adjust the current appraised value to a basis consistent with that ruling as to the Property's true valuation.

Assessor now appeals.

■■■ On appeal, we review the underlying decision of the administrative agency, in this case the STC, and not the judgment of the trial court. *Shipman v. Dominion Hospitality*, 148 S.W.3d 821, 822 (Mo. banc 2004). We are limited in our review to a determination of whether the decision of the administrative agency is supported by competent and substantial evidence on the record as a whole, or whether it was arbitrary, capricious, unreasonable, or in excess of the STC's jurisdiction. *Id.* Whether the proper standard of value and approach to valuation were correctly applied under the particular circumstances and facts of the case is a question of law. *Snider v. Casino Aztar/Aztar Missouri Gaming Corp.*, 156 S.W.3d 341, 346 (Mo. banc 2005). We consider the evidence in the light most favorable to the STC. *Algonquin Golf Club v. State Tax*

---

**5.** Assessor asserts in an affidavit executed in September 2007 that he personally was prevented from presenting testimony in the hearing for the 2001 Decision because the hearing was held on election day when he was running for the office of Assessor of St. Charles County. He also avers that the Hearing Offi-

cer refused to permit the then current Assessor of St. Charles County to obtain and introduce an appraisal of the Property from an independent appraiser. There was no challenge to this ruling, and no further appeal from the 2001 Decision.

*Commission,* 220 S.W.3d 415, 418 (Mo. App.2007). This Court is reluctant to substitute its own judgment for that of the STC in matters of property tax assessment, and will defer to the STC's determination unless there is clear abuse. *Id.* However, when an administrative decision is based on that agency's interpretation and application of the law, this Court reviews the agency's conclusions of law *de novo.* *Id.* (quoting *Twelve Oaks Motor Inn, Inc. v. Strahan,* 96 S.W.3d 106, 109 (Mo.App.2003)). In reaching its decision, the STC construed section 137.345.5, among other statutes, and accordingly, we review its determination *de novo. See id.*

Taxpayer's sole point relied on contends that the STC erred in setting aside the decision of the Hearing Officer and sustaining the valuation of the Property determined by the Assessor and approved by the BOE because section 137.345.5 mandates that the Assessor base future assessments on the basis and methodology established in Taxpayer's successful appeal in the 2001 Decision. Taxpayer asserts that when the STC sustained the Assessor's determination of value for 2003/2004, it misapplied the law and failed to comply with section 137.345.5, as the Assessor's determination of value did not utilize the basis and methodology established in the 2001 Decision. Taxpayer avers that this resulted in the improper assessed value of the Property.

 Section 137.345.5 does not define "basis" and this statute has not yet been construed or interpreted by any Missouri appellate court. "Statutory construction is a matter of law." *Dubinsky v. St. Louis Blues Hockey Club,* 229 S.W.3d 126, 130 (Mo.App.2007). The primary rule of statutory construction is to determine the legislative intent from the language used in the statute by considering the plain and ordinary meaning of the words used therein. *Id.* Where the language is clear and unambiguous, we will give effect to the language as written, and will not engage in statutory construction. *Id.* This Court presumes that the legislature intended that every word, clause, sentence, and provision of a statute have effect and should be given meaning. *Id.* Conversely, we presume that the legislature did not include excess language or idle verbiage in a statute. *Id.* "Courts are not authorized to read a legislative intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language."

 The term basis is defined as "the principal component of something" and also as "something on which something else is established or based." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 134 (1991). The plain and ordinary meaning of "basis" as used in section 137.345.5 requires that there be some substantive connection between the valuation of property established through a successful appeal and subsequent assessments of that property. It must be the "basis." Section 137.345.5 requires that "any increases must be established from that basis." To meet the statutory requirement, there must be evidence of some change in circumstances regarding the property, such as new improvements, zoning or land use changes, or changes in market or economic conditions from the time of the successful appeal to the time of the future assessment.

 It is not legally sufficient for an assessor to pay lip-service to the mandate of section 137.345.5. To claim, as the Assessor did in this case, that he did use the valuation set by the successful Taxpayer appeal in the 2001 Decision as the basis for the 2003/2004 assessment, but that a more than tripling of the assessed value was justified by "economic conditions" and the application of assessment techniques is to render section 137.345.5 meaningless.

The Assessor admitted that there were no new improvements to the Property and that there had been no rezoning or other change to the Property. There was no evidence that the surrounding properties had greatly increased in value since 2001. And there was no evidence of such a change in "economic conditions" that would justify a 300% increase. The STC has also misinterpreted and misapplied section 137.345.5. It concluded that:

> It is clear that the legislature wants the Assessors to give due regard to Tax Commission decisions. However, once the Assessor has considered the Tax Commission decision, nothing prohibits the Assessor from raising value if he or she determines that the prior Tax Commission decision does not represent market value for the tax day in question.

This is an invalid argument. It is clear that in the vast majority of successful tax assessment appeals, the assessor considered the market value of the property at issue to be higher than that determined by the STC in the appeal. Using the STC approach, an assessor could look at a STC decision after losing an appeal, consider it for a moment, and then in the next assessment cycle reassess it at precisely the same value that the STC rejected in the decision. An assessor could do this even if there were no change in circumstances affecting the subject property by relying on the mandate of section 137.115, which requires assessors to assess real property at the appropriate percentage of its true value in money. This interpretation of section 137.345.5 renders the statute meaningless. So long as an assessor could make a determination that the market value is higher than the valuation determined in an appeal, he could compel the taxpayer to appeal the property valuation every new assessment cycle.

This does not mean that an assessor cannot ever increase the assessed value of a property following a successful appeal or that the assessor is required to use the same methodology of appraisal used by the taxpayer in his or her successful appeal of an assessment. Such a rigid interpretation of section 137.345.5 would make it impossible to achieve the mandate of the Missouri Constitution, Article X, Section 3, that taxes "shall be uniform upon the same class or subclass of subjects within the territorial limits of the authority levying the tax." It would also make it impossible for assessors to follow the mandate of section 137.115. Section 137.345.5 is not meant to penalize the assessor for not prevailing in an appeal of an assessment, but rather to provide some relief for the taxpayer who does successfully appeal an assessment. It places a check on an assessor that loses an assessment appeal for a property from simply reassessing that property at a value that is essentially unrelated to that determined in the appeal. There is nothing in the statute that requires an assessor in a subsequent assessment to use the same methodology used by an expert in a successful appeal, but the newly assessed value must be based on that set by the appeal. The STC misinterpreted and misapplied section 137.345.5. Point sustained in part.

The judgment of the circuit court reversing the STC and ordering Assessor and St. Charles County to adjust the appraised value of the Property to a basis consistent with the ruling in the 2001 Decision as to valuation, and to base any future assessments of the Property on the value established in the 2001 Decision consistent with section 137.345.5 is affirmed.

ROBERT G. DOWD, JR. and SHERRI B. SULLIVAN, JJ., concur.