

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| BI-NATIONAL GATEWAY TERMINAL, LLC, ET AL., | ) | No. ED112575 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Jason Sengheiser |
| THE CITY OF ST. LOUIS, | ) | |
| | ) | |
| Respondent. | ) | Filed: September 3, 2024 |

## Introduction

The central issue in this appeal is whether the Director of Airports ("Director") for the City of St. Louis ("City") had the authority, pursuant to Ordinance 70909, to terminate a lease agreement entered into between the parties. Bi-National Gateway Terminal, LLC ("Bi-National") and Ricardo Farias Nicolopulos ("Mr. Nicolopulos") (collectively "Appellants") appeal the trial court's grant of summary judgment in favor of the City. Appellants assert four points on appeal. In Point I, Bi-National asserts the trial court erred in granting summary judgment because the Director did not have the authority to terminate the lease between the parties as she was not permitted to act on her own in connection with the lease. This Court finds Ordinance 70909's plain language authorized the Director to act on behalf of the City to terminate the lease at issue. This Court declines to review Points II-IV because the points relied on are noncompliant with Rule 84.04(d) and preserve nothing for our review.

Accordingly, the trial court's judgment is affirmed.

**Factual and Procedural Background**

The City owns and operates St. Louis Lambert International Airport (the "Airport"), which is managed by the Director. Mr. Nicolopulos formed Bi-National, and, in August 2016, Mr. Nicolopulos, as acting president of Bi-National, entered into a lease agreement ("First Lease") for a section of the airport known as the Northern Tract. In February 2019, the parties entered into a second lease agreement ("Second Lease") for the Northern Tract. The Second Lease was considered "an amendment and a complete and full restatement of [the First Lease]." Pursuant to the Second Lease, there were several conditions Bi-National needed to successfully fulfill by May 15, 2019 before establishing a commencement date. Bi-National failed to complete the prerequisite conditions even after being granted an extension. On May 28, 2019, the Director gave written notice to Bi-National that the preconditions remained unsatisfied and the City deemed the Second Lease null and void and the City was also terminating the First Lease. The letter, in pertinent part, stated:

> Pursuant to the terms of Section 302 of the Second [Lease], this letter constitutes written notice that the Second [Lease] is deemed null and void and neither party to the Second [Lease] will have any rights or obligations, other than the provisions of Sections 303 and 304 which survive the termination.
> ….
>
> Pursuant to Sections 302 and 303 of the Second [Lease], the City is exercising its discretion to revoke Bi-National's leasehold rights granted under the First [Lease] which as of the date hereof shall be null and void and terminated and neither party shall have any further obligations thereunder.

On June 4, 2019, the Airport Properties Division Manager sent a letter to Bi-National instructing it to promptly remove its property and surrender possession of the Northern Tract.

On August 26, 2019, Appellants filed a petition in connection with the termination of the Second Lease. Subsequently, Appellants filed an amended petition alleging four counts: ejectment

(Count I); common law trespass (Count II), specific performance (Count III); and tortious interference (Count IV). Counts I-III were brought on behalf of Bi-National and Count IV was brought on behalf of Mr. Nicolopulos. The City responded by filing a motion to dismiss. The trial court granted the City's motion in part and dismissed Counts III and IV.

On May 20, 2020, the City filed a motion for summary judgment on Counts I and II, contending Bi-National's claims for ejectment and trespass must fail because the Director, on behalf of the City, exercised its rights under the Second Lease to deem it null and void, and Bi-National had no right to continue possession of the Northern Tract. The City also argued the claims must fail because Bi-National abandoned the Northern Tract. While the first motion for summary judgment was pending, the City filed a second motion for summary judgment on October 30, 2023. On November 15, 2023, the trial court granted the first motion for summary judgment, finding Ordinance 70909 authorized the Director to "'enter into and execute on behalf of the City and in the City's best interest any attendant or related documents' or instruments necessary to protect the City's interest with respect to the Second [] Lease." On December 11, 2023, the trial court granted the City's second motion for summary judgment.[1]

This appeal follows.

### Standard of Review

This Court reviews the trial court's grant of summary judgment *de novo*. *Lisle v. Meyer Elec. Co., Inc.*, 667 S.W.3d 100, 103 (Mo. banc 2023). "Summary judgment is only proper if the

---

[1] We must acknowledge the unique procedural posture of this case in which the City made the decision to submit two motions for summary judgment on similar bases. "There is no rule that a trial court is barred from deciding a summary judgment motion under submission merely because a subsequent motion is filed by the movant, nor will we create one." *Potts v. Velasco*, 926 S.W.2d 931, 933 (Mo. App. E.D. 1996). Here, the trial court granted both of the City's motions, but Bi-National only responded to one. We will review only the initial (May 2020) motion for summary judgment (and supporting documents) to which Bi-National indisputably responded. *See id.* (deciding that because appellant filed two successive motions for summary judgment, the appellate court would only review the initial summary judgment motion which respondent indisputably responded to).

moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Z.S. by & through P.S. v. Rockwood Sch. Dist.*, 674 S.W.3d 818, 820 (Mo. App. E.D. 2023). "[W]e will affirm the grant of summary judgment on any legal theory supported by the record, whether or not it was the basis relied upon by the trial court." *Ross v. Scott*, 593 S.W.3d 627, 630 (Mo. App. E.D. 2019).

**Discussion**

Rule 84.04 Briefing Deficiencies

Before we reach Appellants' claims of error, this Court must address the City's argument that Appellants' brief violates Rule 84.04[2] in several respects, thus leaving nothing for our review.

"Rule 84.04 sets forth the requirements for briefs filed with appellate courts, and compliance with these requirements is mandatory." *Placke v. City of Sunset Hills Missouri*, 670 S.W.3d 228, 231 (Mo. App. E.D. 2023). "Compliance with Rule 84.04 is required to give notice to the other party of the precise matters at issue and to ensure that appellate courts do not become advocates for the appellant by speculating facts and arguments that have not been made." *Murphy v. Steiner*, 658 S.W.3d 588, 591 (Mo. App. W.D. 2022). The Supreme Court of Missouri has expressly made clear the importance of adhering to the briefing requirements set forth in Rule 84.04:

> When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

---

[2] All references are to Missouri Supreme Court Rules (2024).

*Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (quoting *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978)).

First, Appellants' statement of facts fails to contain "a fair and concise statement of the facts relevant to the questions presented for determination without argument." Rule 84.04(c). Appellants' 16-page statement of facts is argumentative and fails to afford this Court "an immediate, accurate, complete and unbiased understanding of the facts of the case." *Eberhardt v. Hagemann Eberhardt*, 609 S.W.3d 895, 899 (Mo. App. E.D. 2020) (quoting *Carlisle v. Rainbow Connection, Inc.*, 300 S.W.3d 583, 585 (Mo. App. E.D. 2009)). Rule 84.04(c) also requires "*[a]ll* statements of facts shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." (Emphasis added). So, "[f]or every individual statement of fact, a specific page reference is required." *Lexow*, 643 S.W.3d at 508. Appellants' statement of facts provides sporadic citations to the record of appeal with the majority of citations only being included at the end of a paragraph. "[Appellants'] method of providing paragraphs of text followed by a citation to pages of the legal file … on which the preceding material may be found does not strictly adhere to Rule 84.04(c)." *Id.*

Further, Rule 84.04(d) requires each point relied on shall: "(A) [i]dentify the trial court ruling or action the appellant challenges; (B) [s]tate concisely the legal reasons for the appellant's claim of reversible error; and (C) [e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(2). "[M]ultifarious points—those that contain multiple, independent claims—are noncompliant with Rule 84.04[(d)]." *Jackson v. Sykes*, 686 S.W.3d 393, 396 (Mo. App. E.D. 2024). "[M]ultifarious claims of error preserve nothing for appeal and are subject to dismissal." *Barbieri v. Barbieri*, 633 S.W.3d 419, 432 (Mo. App. E.D. 2021).

Each of Appellants' points are defective. Bi-National's first three points on appeal are multifarious because each point relied on challenges two distinct rulings: the trial court's ruling on Count I and, separately, its ruling on Count II. Rule 84.04(d) "requires separate points to challenge separate rulings or actions." *Lexow,* 643 S.W.3d at 505–06. Additionally, Points II and III not only challenge two separate rulings, but also set forth multiple legal theories for reversal and fail to succinctly explain, in the context of the case, the legal reasons supporting the claim of reversible error. An appellant must address separate legal theories in different points relied on to comply with Rule 84.04(d). *See Dieckmann v. JH Constr. 2, LLC*, 619 S.W.3d 513, 522 (Mo. App. E.D. 2021). Lastly, while Mr. Nicolopulos' Point IV correctly asserts a single claim of error challenging the trial court's dismissal of Count IV, it asserts multiple grounds for reversal. Again, points containing multiple legal grounds for reversal violate Rule 84.04(d). *See id*.

As a result of Appellants' noncompliance with this rule, Appellants failed "to provide the respondent with notice of the precise matter which must be answered and to inform the court of the issues presented." *Revis v. Bassman*, 604 S.W.3d 644, 650 (Mo. App. E.D. 2020) (quoting *King v. King,* 548 S.W.3d 440, 443 (Mo. App. E.D. 2018)). Specifically, as to Points II-IV, Appellants left the City in the unfair position of deciphering each claim of error, and forced the City to develop multiple arguments to ensure it responded to the intended claim of error. Additionally, for this Court to conduct any meaningful review on Points II-IV, we would have to discern Appellants' assertion for each point, and, in the process, risk interpreting the claims differently than the City or differently than was intended by Appellants. *See Pearson v. Keystone Temp. Assignment Group, Inc.*, 588 S.W.3d 546, 552–53 (Mo. App. E.D. 2019).

Accordingly, although this Court does not condone the briefing violations, we exercise our discretion to review Point I because the violations do not hamper or impede our ability to review

this point. *Lexow*, 643 S.W.3d at 508 ("[T]his Court has discretion to review noncompliant points gratuitously, overlooking the technical deficiencies in the points relied on, when the deficiencies do not impede review on the merits."). This Court, however, declines to review Points II-IV due to the briefing deficiencies referenced above.

Points II-IV are dismissed.

Point I

In Point I, Bi-National asserts the trial court erred in granting summary judgment as to Counts I and II because the Director did not have the authority to terminate the Second Lease because, pursuant to Ordinance 70909, she was not permitted to act on her own in connection with the Lease. We deny this point because the Ordinance's plain language authorized the Director to unilaterally terminate the Second Lease on behalf of the City.

Ordinance 70909, in part, provides:

The Mayor, the Comptroller, the Register, the City Counselor, the Director of Airports, and other appropriate officers, agents, and employees of the City, with the advice of the Director of Airports, are hereby authorized and directed to enter into and execute on behalf of the City and in the City's best interest any attendant or related documents, agreements, permits, amendments, affidavits, releases, certifications, or instruments deemed necessary to effectuate the terms set forth in the Lease Agreement AL-094, and/or deemed necessary to preserve and protect the City's interest, and/or to take such actions as may be necessary, beneficial, or appropriate in connection with the consummation of the transactions or agreements contemplated herein.

"In ascertaining the meaning of a city ordinance, we apply the same rules used in construing a state statute." *City of Bridgeton v. Titlemax of Mo., Inc.*, 292 S.W.3d 530, 535 (Mo. App. E.D. 2009). This "Court will ascertain the intent of the municipality, give effect to that intent, if possible, and consider the plain and ordinary meaning of the language used." *St. Louis Ass'n of Realtors v. City of Florissant*, 632 S.W.3d 414, 419 (Mo. App. E.D. 2021) (quoting *City of St. Peters v. Roeder*, 466 S.W.3d 538, 543 (Mo. banc 2015)). "Courts are not authorized to read a legislative

intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language." *City of Bridgeton*, 292 S.W.3d at 536 (quoting *Shipman v. DNS Elec. Materials, Inc.*, 267 S.W.3d 751, 758 (Mo. App. E.D. 2008)). "Where the statutory language is clear and unambiguous, this Court will give effect to the language as written and not engage in statutory construction." *Id*.

In statutory construction, "conjunctions are versatile words, which can work differently depending on context." *Pulsifer v. United States*, 601 U.S. 124, 151, 144 S. Ct. 718, 736, 218 L. Ed. 2d 77 (2024). The general rule is that when a conjunction such as "and" is used, it connects two coordinate clauses or phrases. *Tinnin v. Mo. Dep't. of Transp. & Patrol Employees' Ret. Sys.*, 647 S.W.3d 26, 36 (Mo. App. W.D. 2022). The Supreme Court of Missouri has acknowledged that, depending on the context, "'and' can mean 'or', [but] most commonly 'and' means simply 'and.'" *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 615 (Mo. banc 2016). In this case, the ordinance explicitly authorized numerous City officials to act on the City's behalf – the Mayor, the Comptroller, the Register, the City Counselor, the Director of Airports, and other appropriate officers, agents, and employees of the City – and used the word "and" to conjoin them.

Bi-National contends nothing in Ordinance 70909 authorizes the Director to act on her own in connection with the Lease, rather she was to act together with other City officers, providing them with her advice about what actions to take with respect to the Second Lease. This Court disagrees. Appellants' interpretation that "and" should be interpreted to mean that *all* of the named City officials – the Mayor, the Comptroller, the Register, the City Counselor, *and* the Director of Airports – were obligated to collectively terminate the Second Lease would require this Court to ignore the placement of the term and add it before the reference to the Director. However, "this Court refrains from adding words to the statute under the guise of construction." *Doyle v. Tidball*,

8

625 S.W.3d 459, 466 (Mo. banc 2021) (internal quotations and citation omitted). The term "and" was placed in between the named officials and "other appropriate officers, agents, and employees of the City," signaling a list of those City officials with the authority to act individually on behalf of the City. This conclusion was conceded by Bi-National at oral argument. With no ambiguity, this Court finds the plain language permits *any* of the listed executive officials to:

> [E]nter into and execute on behalf of the City and in the City's best interest any attendant or … agreements … deemed necessary to effectuate the terms set forth in the Lease Agreement AL-094, and/or deemed necessary to preserve and protect the City's interest, and/or to take such actions as may be necessary, beneficial, or appropriate in connection with the consummation of the … agreements contemplated herein [.]

Therefore, we find Ordinance 70909 granted the Director the authority to unilaterally terminate the Second Lease as the plain language permitted the Director to "take such actions as may be necessary, beneficial, or appropriate in connection with the consummation of" the Second Lease. *See c.f. Client Servs., Inc. v. City of St. Charles*, 182 S.W.3d 718, 723 (Mo. App. E.D. 2006) (holding an ordinance permitted city administrator to enter a contract but failed to give authority to terminate or revoke the contract). Here, there is no dispute it was in the best interest of the City to nullify and void the Second Lease as Appellants were not able to meet the enumerated preconditions for the Second Lease to be considered in effect.

Because we find the Director had the authority, pursuant to Ordinance 70909, to terminate the Second Lease, the City was entitled to judgment as a matter of law on Counts I and II.

Point I is denied.

**Conclusion**

The trial court's judgment is affirmed.

_____
Michael S. Wright, Judge

John P. Torbitzky, P.J. and
Robert M. Clayton III, J. concur.