

# In the Missouri Court of Appeals
## Eastern District

### SPECIAL DIVISION

| | |
|---|---|
| MARK BOLES, ET AL., | ) No. ED111495 |
| | ) |
| Respondent/Cross-Appellant, | ) Appeal from the Circuit Court of |
| | ) the City of St. Louis |
| vs. | ) |
| | ) Honorable Jason M. Sengheiser |
| CITY OF ST. LOUIS, ET AL., | ) |
| | ) |
| Appellant. | ) Filed: May 28, 2024 |

### Introduction

This consolidated appeal must determine the meaning of the City of St. Louis' Earnings Tax Ordinance § 5.22.020 ("Earnings Tax Ordinance" or "Ordinance"), which imposes a one percent tax on "[s]alaries, wages, commissions and other compensation earned after July 31, 1959, by nonresident individuals of the City for work done or services performed or rendered in the City[.]"[1] The parties contest whether the earnings tax should be assessed when nonresidents work remotely outside of the City for their City-based employers.[2] Appellants Gregory F.X. Daly (the "City Tax Collector"), in his official capacity as the Collector of Revenue for the City of St. Louis, and the City of St. Louis ("City") (collectively, "Collectors") appeal from a final judgment entered on March 30, 2023, incorporating a January 2022 order and a January 2023 order and judgment,

---

[1] All references are to Chapter 5, St. Louis City Revised Code, § 5.22.020.
[2] "Remote work," "virtual work," and "telework" are used interchangeably by the parties and the trial court. This Court will use the term, "remote work," to encompass all three terms.

in which the trial court granted, in part, Respondents' – Mark Boles, Nicholas Oar, Kos Semonski, Christian E. Stein, II, Marc S. Kolaks, and Raymond T. Jaeger (collectively, "Employees") – summary judgment motion.

Collectors raise two points on appeal. In Point I, Collectors contend the trial court erred in interpreting the Ordinance because its reading violates the rules of statutory construction. In Point II, Collectors argue the trial court erred because they are entitled to judgment as a matter of law in that the undisputed facts show Employees rendered services in the City, and therefore, the remote work at issue is subject to the earnings tax.

Employees cross-appeal and assert seven claims of error. The cross-appeal challenges the trial court's March 30, 2023 final judgment incorporating the January 2023 summary judgment order and judgment, and parts of the January 2022 order dismissing all but two claims asserted in their Second Amended Petition. In Points I–V, Employees argue the trial court erred in dismissing the counts in which they sought class action certification under § 139.031 ("Refund Statute") and, alternatively, under 42 U.S.C. § 1983 ("§ 1983").[3] In Point VI, Employees argue the trial court erred in partially granting Collectors' summary judgment motion as to Count IX because Collectors violated the Hancock Amendment when they began taxing remote work, which was not previously taxed and, in effect, broadened the definition of the tax base. In Point VII, Employees contend the trial court erred in denying their motion for attorneys' fees because this case falls within the special-circumstances and the balancing-of-the-benefits exceptions to the American Rule.

This Court holds the Earnings Tax Ordinance's language is clear and unambiguous, and the remote work done and/or services at issue were not performed or rendered *in* the City. Thus,

---

[3] All references are to Mo. Rev. Stat. Cum. Supp. (2021).

Employees were not liable for the earnings tax for the days they worked remotely outside of the City and are entitled to refunds. This Court holds Employees' cross-appeal claims of error are without merit.

Accordingly, the trial court's judgment is affirmed.

**Factual and Procedural Background**

The Missouri Legislature enacted the Earnings Tax Statute, codified in § 92.111.2(2), and enabled the City to enact the Ordinance in 1959.[4] The Ordinance authorizes the City to impose a one percent tax on "[s]alaries, wages, commissions and other compensation earned . . . by nonresident individuals of the City for work done or services performed or rendered in the City[.]" Collectors are the named parties responsible for collecting the earnings tax. Employees are nonresidents of the City who worked for City-based employers in 2020 and 2021, either on-site at their employers' premises in the City or remotely outside of the City. Regardless of the work model Employees chose, Collectors assessed the earnings tax against Employees, and they either paid their respective taxes under protest or the earnings tax was automatically withheld from their paychecks.[5] Employees then submitted refund requests for the number of days they worked remotely outside of the City for each calendar year.[6] In 2020 and 2021, the City Tax Collector denied Employees' requests for refunds for remote work performed outside of the City, with the exception of requests for work done while traveling for business purposes for their respective City-based employers.[7]

---

[4] Because the Earnings Tax Ordinance's language mirrors the language of § 92.111.2(2), this Court will refer only to the language in the City's Ordinance.

[5] Because the amounts owed to each Employee are not at issue, we do not include them in this opinion.

[6] None of the parties contest the timeliness of the request for refunds on appeal and, therefore, this Court does not address that issue. *See* § 139.031.1.

[7] The trial court found, prior to 2020, the City Tax Collector did not distinguish between remote work outside of the City from business travel outside of the City and issued refunds to Employees. However, the City Tax Collector modified the criteria for refunds in 2020 during the COVID-19 pandemic, issuing refunds only for business travel outside of the City, but not for remote work outside of the City. Collectors at no time engaged in the Missouri

3

Employees sued Collectors seeking refunds for the earnings tax paid for days they worked remotely outside of the City. The case proceeded on Employees' Second Amended Petition, which asserted the following claims: declaratory judgment seeking to interpret the Ordinance (Count I); declaratory judgment determining the final date to submit an application for refunds of earnings tax paid by nonresidents for days working remotely (Count II); refunds under the Refund Statute (Count III); in the alternative, relief under § 1983 (Counts IV–VII); in the alternative, preliminary and permanent injunctive relief requiring Collectors to stop instructing employers to violate the law (Count VIII); and declaratory relief under the Hancock Amendment (Count IX). Employees also sought class action certification under the Refund Statute, or in the alternative, under § 1983.

Collectors moved to dismiss Employees' Second Amended Petition. On January 3, 2022, the trial court granted Collectors' motion in part and dismissed Counts I, II, and IV–VIII, which left pending Counts III (refunds under the Refund Statute) and IX (declaratory relief under the Hancock Amendment). As to the class action certification, the trial court found "class action relief is unavailable under the Refund Statute." As to Employees' § 1983 claims, the trial court did not directly address whether the class action certification was available under § 1983, but instead found the Refund Statute provides Employees with an adequate remedy, and therefore, relief under § 1983 was unavailable.

The parties then filed cross-motions for summary judgment on the remaining counts. On January 19, 2023, the trial court granted each of the summary judgment motions in part. Finding in Employees' favor on Count III, the trial court found the Ordinance's language was clear and unambiguous, and the remote work and/or services at issue were not rendered in the City. Thus, the trial court determined the nonresident Employees were not liable for the earnings tax for the

Administration Procedures Act's formal rule-making process to make provisions for these exceptions to the Ordinance.

4

days they worked remotely outside of the City and were entitled to their refunds. As to Count IX, the trial court found in Collectors' favor, concluding they did not violate the Hancock Amendment because the earnings tax, since its enactment, has taxed the same property – earnings – and all that changed was the City Tax Collector's application of the Ordinance. The trial court explained that "in order to constitute a violation of the Hancock Amendment, the broadening of the definition of the base of an existing tax must have been done by legislative function."

Employees moved to amend the January 19, 2023 order and judgment and sought attorneys' fees. On March 30, 2023, the trial court denied both motions, reiterated its findings from the January 3, 2022 order and the January 19, 2023 order and judgment, and entered a final judgment disposing of all claims against all parties.

This appeal follows.[8]

## COLLECTORS' APPEAL

### Discussion

#### Points I & II

Collectors raise two points on appeal which this Court addresses together. In Point I, Collectors argue the trial court erred in interpreting the meaning of the phrase "services . . . rendered in the City" in the Earnings Tax Ordinance to mean "services . . . done in the City" because such an interpretation violates the rules of statutory construction. In Point II, Collectors argue the trial court erred because they are entitled to judgment as a matter of law in that the

---

[8] "We must first address the issue of our jurisdiction because Article V, Section 3 of the Missouri Constitution grants exclusive appellate jurisdiction to the Missouri Supreme Court of all cases involving the constructions of revenue laws of the state." *Maryville Props., L.P. v. Nelson*, 83 S.W.3d 608, 610 (Mo. App. W.D. 2002). However, "[w]here an appeal involves the application of revenue laws already construed by the Missouri Supreme Court," as in the present case, "jurisdiction lies with [this] Court, and we are bound to apply the Missouri Supreme Court's precedent." *Blankenship v. Franklin Cnty. Collector*, 619 S.W.3d 491, 498 (Mo. App. E.D. 2021); *see also Tannenbaum v. City of Richmond Heights*, 704 S.W.2d 227, 229 (Mo. banc 1986); *State ex rel. Indus. Services Contractors, Inc. v. Cnty. Comm'n of Johnson Cnty.*, 918 S.W.2d 252, 256 (Mo. banc 1996). Thus, jurisdiction is properly vested in this Court.

undisputed facts presented under Rule 74.04(c) show Employees rendered services in the City and, therefore, the remote work at issue was subject to the earnings tax. This Court holds the Ordinance's language is clear and unambiguous, and the work done or services performed or rendered remotely by Employees outside of the City are not subject to the earnings tax. Therefore, Collectors are not entitled to judgment as a matter of law.

**Standard of Review**

This Court reviews the trial court's grant of summary judgment *de novo. Lisle v. Meyer Elec. Co., Inc.*, 667 S.W.3d 100, 103 (Mo. banc 2023). "Summary judgment will be affirmed when the moving party has established a right to judgment as a matter of law on the basis of facts as to which there is no genuine dispute." *Id*. (quoting *Holmes v. Steelman,* 624 S.W.3d 144, 149 (Mo. banc 2021). "In determining whether a party has established a right to judgment, 'issues of statutory interpretation are questions of law reviewed *de novo*.'" *Id*. (quoting *Holmes,* 624 S.W.3d at 148).

*A. Interpreting the Earnings Tax Ordinance*

The Earnings Tax Ordinance imposes a one percent tax on earnings of "nonresident individuals of the City for work done or services performed or rendered in the City[.]" The parties contest the meaning of the phrase "services … rendered in the City" and whether the Ordinance's language authorizes Collectors to impose the earnings tax when nonresidents of the City work remotely outside of the City.

"In ascertaining the meaning of a city ordinance, we apply the same rules used in construing a state statute." *City of Bridgeton v. Titlemax of Mo., Inc.*, 292 S.W.3d 530, 535 (Mo. App. E.D. 2009). Accordingly, this Court "will ascertain the intent of the municipality, give effect to that intent, if possible, and consider the plain and ordinary meaning of the language used." *St. Louis*

*Ass'n of Realtors v. City of Florissant*, 632 S.W.3d 414, 419 (Mo. App. E.D. 2021) (quoting *City of St. Peters v. Roeder*, 466 S.W.3d 538, 543 (Mo. banc 2015)). This Court presumes "the legislature intended that every word, clause, sentence, and provision of a statute have effect and [should] be given meaning." *City of Bridgeton*, 292 S.W.3d at 536. This Court also presumes "the legislature did not include excess verbiage in a statute." *Id*. "Courts are not authorized to read a legislative intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language." *Id*. (quoting *Shipman v. DNS Elec. Materials, Inc.*, 267 S.W.3d 751, 758 (Mo. App. E.D. 2008)). "Where the statutory language is clear and unambiguous, this Court will give effect to the language as written and not engage in statutory construction." *Id*. However, this Court "will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result." *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 122 (Mo. banc 2023). "An ordinance enacted as a taxing measure must be given a strict interpretation and construed against the taxing authority and in favor of the taxpayer." *Bachman v. City of St. Louis*, 868 S.W.2d 199, 202 (Mo. App. E.D. 1994).

The parties stipulate the terms "remote work," "virtual work," and "telework" hold the same meaning: "using technology, including, but not limited to, electronic, computer, or similar equipment, to work physically from a location outside of the City for a City-based employer, but not while traveling for that employer for a business purpose."[9] The Ordinance does not expressly address whether the earnings tax should be assessed on the earnings of nonresidents of the City when they work remotely for their City-based employers. The Ordinance also does not define

---

[9] While the parties stipulate to the definition of "remote work," we must clarify the parties "cannot by stipulation or otherwise bind this Court to a particular interpretation of [the Ordinance]." *Blue Springs R-IV Sch. Dist. v. Sch. Dist. of Kansas City*, 415 S.W.3d 110, 115 (Mo. banc 2013); *see also State v. Biddle*, 599 S.W.2d 182, 186 n.4 (Mo. banc 1980) ("The general rule is that stipulations of litigants cannot be invoked to bind or circumscribe a court in its determination of questions of law."). Further, this Court does not issue any opinion as to whether refunds for work done while traveling for business purposes were properly or improperly issued as that question was not raised before the trial court or this Court.

7

"rendered" or "performed." For that reason, the parties narrow the issue to the meaning of "rendered" to support their respective arguments as to whether "rendered" encompasses remote work.

Collectors argue the legislature intended to "tax two (2) separate activities: services performed in the City and, separately, services rendered in the City," and urge this Court to adopt the definition of "render" that means "delivered" or "transmitted." Under Collectors' interpretation, "performed" applies to earnings derived from services which are carried out or done in the City, while "rendered" applies to earnings derived from services delivered or transmitted into/to the City. Conversely, Employees contend the "most obvious applicable definition" of "render" is "to do (a service) for another," and the earnings tax can only be applied when the nonresident is physically present and working in the City.

Although the parties focus only on the different meanings of "render," this Court must analyze the definitions of both "render" and "perform" to determine the type of "services" the Ordinance intended to tax. *See City of Bridgeton*, 292 S.W.3d at 536. The Ordinance states "performed" or "rendered" in the disjunctive. The "ordinary use" of the word "or" is "almost always disjunctive, that is, the words it connects are to be given separate meanings." *Hoeft v. True Mfg. Co., Inc.*, 604 S.W.3d 337, 341 (Mo. App. E.D. 2020) (quoting *Loughrin v. United States*, 573 U.S. 351, 357, 134 S. Ct. 2384, 189 L.Ed.2d 411 (2014)). "In the absence of statutory definitions," as here, "the plain and ordinary meaning of [the] term[s] may be derived from a dictionary and by considering the context of the entire [ordinance] in which [they] appear." *City of Olivette v. St. Louis Cnty.*, 507 S.W.3d 637, 644 (Mo. App. E.D. 2017) (quoting *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007)).

This Court consults Webster's Third New International Dictionary, the institutional dictionary of choice, to determine the plain and ordinary meanings of "perform" and "render." *AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 132 (Mo. banc 2014). "Perform" is defined, in pertinent part, as: "2a: to carry out or bring about: ACCOMPLISH;" and "4b (2): to give a performance: put on a show: PLAY[.]" *Webster's Third New Int'l Dictionary of the English Language* 1638 (3d ed. 2002). "Render" is defined, in relevant part, as: "2 a**:** to transmit to another**:** DELIVER"; and "3d: to do (a service) for another[.]" *Id*. at 1922.[10]

Collectors focus on the definition of "render" as "2a: to transmit to another: DELIVER", while Employees assert definition 3d applies: "to do (a service) for another[.]" While Collectors are correct the earnings tax is intended to tax earnings derived from two different activities, their argument the Ordinance intends to tax services which are done in the City and *transmitted into* the City is misplaced.[11] When considering the context of the entire Ordinance and giving the terms "render" and "perform" their plain and ordinary meanings, the most applicable definition of

---

[10] Although there are many definitions of the terms "perform" and "render," this Court does not have to choose the first definition provided for those terms. Instead, the rules of statutory construction instruct this Court to consider the dictionary's definition and "the *context* of the *entire* statute in which it appears" to determine the applicable meaning. *Dubuc v. Treasurer of State*, 659 S.W.3d 596, 603 (Mo. banc 2023) (quoting *Swafford v. Treasurer of Mo.*, 659 S.W.3d 580, 583 (Mo. banc 2023) (emphasis removed and added). "The variety of usages one word connotes in different contexts … is the mark of precise definition and clear expression, and not of muddled meaning." *St. Louis Christian Home v. Mo. Comm'n on Human Rights*, 634 S.W.2d 508, 512 (Mo. App. W.D. 1982). "Ambiguity does not result … merely because a word has multiple meanings." *Id*.

[11] Collectors also contend "it is settled law in Missouri that a person's extraterritorial acts committed almost completely outside of Missouri can subject that person to Missouri's laws." To support this argument, Collectors reference cases that look at the actions a nonresident directs into Missouri by using mail, telephone, or the internet. *See*, *e.g. Bryant v. Smith Interior Design Grp., Inc*., 310 S.W.3d 227, 232 (Mo. banc 2010); *Andra v. Left Gate Prop. Holding, Inc*., 453 S.W.3d 216, 227–28 (Mo. banc 2015); and *In re Charges of Pro. Conduct in Panel File No*. 39302, 884 N.W.2d 661, 667–69 (Minn. 2016). This Court finds these cases distinguishable and inapposite because those cases consider the contacts a nonresident of *one state* has with *another state* to establish personal jurisdiction over the nonresident, or look at the remote actions a nonresident transmits into another state in order for the nonresident to be held responsible for their conduct in the foreign state. This Court does not need to examine case law discussing the extraterritorial acts of an individual to determine the nature or quality of the contacts Employees have with the State of Missouri or with the City because the Ordinance imposes a tax on the earnings of a nonresident for "work done or services performed or rendered in the City[.]" All this Court is required to do is apply the rules of statutory construction to interpret the language of the Ordinance and determine if Employees' earnings when working remotely are subject to the earnings tax. For these reasons, this Court finds Collectors' argument without merit.

"perform" is "to give a performance" and "render" is "to do (a service) for another." As such, the earnings tax contemplates two different activities: "perform" applies to earnings derived from services such as performances, sporting events, and other entertainment events, while "render" applies to services done for another such as those provided by a law firm, an accounting firm, or a consulting firm for their clients.[12]

Additionally, this Court cannot ignore the remaining words in the Ordinance. Specifically, the Ordinance's explicit condition that the earnings tax only applies to work done and services rendered or performed "*in* the City." Webster's Third New International Dictionary defines the preposition "in" as "used as a function word to indicate location or position in space or in some materially bounded object." *Id.* at 1139. If this Court adopts the interpretation of "render" to mean "delivered" or "transmitted," this Court would be required to read the Ordinance as follows: the one percent earnings tax applies to "work done or services performed or rendered ***into*** the City" or "rendered ***to*** the City." In doing so, this Court would have to change the Ordinance's language by replacing the term "in" with "into" or "to."[13] This we cannot do. *See Grain Belt Express Clean Line, LLC v. Pub. Serv. Comm'n*, 555 S.W.3d 469, 473 (Mo. banc 2018) ("This Court cannot

---

[12] Even though "performance" can also be defined as "to carry out or bring about" or "accomplish," these definitions provide little difference between "performed" and "rendered," which violates the general statutory construction rule that terms separated by "or" are generally to be given separate meanings. *See Hoeft*, 604 S.W.3d at 341. Additionally, giving the terms separate meanings adheres to the presumption "that each word, clause, sentence, and section of a statute will be given meaning and that the legislature did not insert superfluous language." *Macon Cnty. Emergency Servs. Bd. v. Macon Cnty. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016) (citing *Farish v. Mo. Dep't of Corr.*, 416 S.W.3d 793, 797 (Mo. banc 2013)).

[13] Collectors argue such an interpretation is "hyper technical" and "incorrect" because "'in' is synonymous with 'into.'" While Collectors may be correct the two definitions may be synonymous under certain circumstances, in the *context* of the Ordinance, "in", means in the geographic parameters of the City of St. Louis. If the legislature intended for services performed or rendered outside of the City to include those activities that are delivered or transmitted "into" the City, the legislature would have dictated such inclusion. Further, Collectors take issue with the trial court interpreting the term "in" without the parties briefing the applicable meaning of the term. To the extent Collectors suggest the trial court acted outside of its authority because it examined other terms within the Ordinance without any argument, this Court disagrees with that suggestion. This Court holds the trial court properly applied the cannons of statutory construction to the *entire* Ordinance. When a court is interpreting an ordinance, phrases and words cannot be read in isolation "rather, [they] are read in the context of the statute [or ordinance] to determine their plain and ordinary meaning." *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019); *see also Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 724 (Mo. banc 2017).

ignore words in a statute and must give meaning to every word used."); *see also Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 390 (Mo. banc 2002) ("Courts cannot add words to a statute under the auspice of statutory construction."). The Ordinance's plain meaning of "in" denotes the physical, geographical parameters of a location: here, the City of St. Louis. Therefore, this Court holds Employees' work or services when working remotely were not done, performed, or rendered *in* the City and are not subject to the earnings tax.

This Court's interpretation is further supported by the Ordinance's original purpose when enacted. The Ordinance was enacted in 1959 and its language has never been amended. During the 1950's and 1960's, remote work was not prevalent as technology was not advanced enough to serve such purpose. For that reason, the Ordinance would not have contemplated scenarios in which a nonresident would be "transmitting" or "delivering" work into the City via the internet or any electronic means, as Collectors contend. Collectors correctly noted in oral argument the world changed as a result of the pandemic. We note the Ordinance's language has not. Second, Collectors conceded at oral argument the purpose of the Ordinance is to "provide[] critical resources for [the City]" such as "street repair, fire and police services, lighting, forestry, neighborhood stabilization services" and "ensure[] that important city services are maintained[,]" such as "sporting events, parks, museums, and the Arch."[14] Employees benefit from and avail themselves of the amenities provided in the City, which are paid for by the one percent tax, when they are *physically* working in the City. Lastly, this Court's interpretation follows Collectors' current practice of excluding work done when traveling for work/business from the earnings tax. Both scenarios require nonresidents to complete work for their respective City employers *outside* of the City.

---

[14] As cited in the Second Amended Petition, the Earnings Tax Department explains on its webpage how the earnings tax revenue is used. Earnings Tax Department, City of St. Louis, https://www.stlouis-mo.gov/government/departments/collector/earnings-tax/index.cfm#:~:text=The%20earning%20tax%20is%20a,who%20work%20within%20city%20limits (last visited May 16, 2024).

11

In sum, this Court interprets the Ordinance term "in" to mean the work or "services performed or rendered" must be done *in* the geographic parameters of the City. Consequently, the earnings from qualifying work or services completed by nonresident Employees when they work remotely outside of the City are not subject to the earnings tax. Therefore, Employees were entitled to judgment as a matter of law on Count III.

### B. Improper reliance on the City Tax Collector's prior conduct

We now turn to Collectors' contention that it was improper for the trial court to rely on the City Tax Collector's prior conduct of issuing nonresidents of the City refunds for the days they worked remotely because it does not give effect to the legislature's intent.

The trial court's January 19, 2023 judgment provides detailed factual findings and a thorough, well-reasoned legal analysis. After applying the rules of statutory construction and interpreting the Ordinance's language, the trial court found it "notable" that:

> [Collectors] seemed to operate according to [Employees'] interpretation until the onset of the Covid-19 pandemic and the accompanying rapid and exponential increase in telework…. [D]uring the Covid-19 pandemic, the tools used for remote or telework were popularized and its use grew exponentially due to the demand of lockdowns because such tools made possible the closing or reduction of many physical office spaces while allowing employees to continue to work through the use of these technological advancements.

> It seems this sudden surge in telework caused the [City Tax] Collector to fear a high demand for the Earnings Tax refund and its potentially profound effect on the City's budget. As a result, it seems the [City Tax] Collector unilaterally altered the criteria for the refunds without pursuing any kind of formal rule-making process or any amendments to the existing Earnings Tax statute…. Moreover, its strains credibility to think [Collectors] always believed they were entitled to more tax dollars but just decided for reasons unknown not to attempt to collect them.

> Further, it is axiomatic to the existence of the rule of law that a society must have a set of rules; such rules must be publicized in advance; such rules must serve to predominately guide prospective behavior; such rules must be understandable to

12

the populace; such rules must not be internally contradictory, such rules must be able to be followed, such rules cannot change too frequently; and such rules must be congruent with the actual administration. See Eight Ways to Fail to Make Law: From Lon L. Fuller, The Morality of Law (New Haven: Yale University Press, 1964). One of the problems in this case is [Collectors] undercut a properly made rule by simply unilaterally changing its interpretation, which taxpayers had come to rely upon, without engaging with the legislative process to properly alter the… Ordinance. In other words, [Collectors'] sudden change in their interpretation of the [Ordinance] violated several of the above doctrines upon which the rule of law depends. To be clear, the court is not basing its judgment on these equitable doctrines, but they are included as a reminder for how things ought to work.

Collectors' assertion the trial court improperly relied on their previous practices to extract legislative intent misconstrues the trial court's discussion. The trial court's discussion was secondary and separate from its analysis applying the rules of statutory construction and interpreting the Ordinance's language. At best, the discussion provided context regarding how the COVID-19 pandemic might have been the catalyst prompting the City Tax Collector to unilaterally change the criteria for refunds and the Ordinance's application, and emphasized to Collectors the importance of engaging in the formal rule-making process to alter or amend the Ordinance. At worst, the discussion could be interpreted as an admonishment or superfluous. But, nowhere in its discussion does the trial court expressly or implicitly state it was engaging in the aforementioned discussion to determine the Ordinance's legislative intent. In fact, the trial court concluded its discussion by clarifying it was "***not*** basing its judgment on these equitable doctrines, but they are included as a reminder for how things ought to work." (emphasis added). Therefore, this Court holds the trial court did not improperly consider the City Tax Collector's previous practices to determine the Ordinance's legislative intent.

Points I and II are denied.

**EMPLOYEES' CROSS-APPEAL**

Employees cross-appeal and assert seven claims of error.[15] In Points I–V, Employees contend the trial court erred in dismissing counts in which they sought class action certification under the Refund Statute, and, alternatively, under § 1983. In Point VI, Employees argue the trial court erred in partially granting summary judgment in Collectors' favor on Count IX because Collectors violated the Hancock Amendment when they began taxing remote work, which was not taxed before, effectively broadening the base of what was being taxed. In Point VII, Employees contend the trial court erred in denying their motion for attorneys' fees because this case falls within the special-circumstances and the balancing-of-the-benefits exceptions to the American Rule. For the reasons stated below, this Court holds the Employees' claims of error are without merit.

---

[15] Collectors filed a motion to dismiss Employees' cross-appeal for failure to comply with Rule 84.04. First, Collectors contend Employees' cross-appeal violates Rule 84.04(c), which requires a party to include "a fair and concise statement of the facts relevant to the questions presented for determination without argument." "Our courts have interpreted this rule to require a concise statement of the evidence most favorable to the verdict." *Schaefer v. Altman*, 250 S.W.3d 381, 384 (Mo. App. E.D. 2008). Employees' statement of facts completely ignores this appellate rule requirement by presenting a statement of facts that is not only argumentative, but also highlights facts favoring Employees and omits facts supporting the judgment. "Aside from violating Rule 84.04(c), failure to acknowledge adverse evidence is simply not good appellate advocacy." *Hendrix v. City of St. Louis*, 636 S.W.3d 889, 897 (Mo. App. E.D. 2021) (quoting *Prather v. City of Carl Junction*, *Mo.*, 345 S.W.3d 261, 263 (Mo. App. S.D. 2011)). "Indeed, it is often viewed as an admission that if the Court was familiar with all of the facts, [that party] would surely lose." *Id.* (quoting *Prather*, 345 S.W.3d at 263). Further, Collectors contend certain points relied on are noncompliant with Rule 84.04(d) because they are multifarious. This Court agrees. While we do not reference every deficient point relied on, this Court takes note of it. Overall, this Court holds Employees' brief falls short of the minimum standards required by Rule 84.04(c)–(d). However, this Court has "the discretion to review non-compliant briefs *ex gratia* where the argument is readily understandable. But we cautiously exercise this discretion because each time we review a noncompliant brief *ex gratia*, we send an implicit message that substandard briefing is acceptable. It is not." *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017) (internal citation omitted). Notwithstanding the shortcomings in briefing, we exercise our discretion to review Employees' cross-appeal, "but only to the extent the content of each argument has been properly preserved or can be readily ascertained." *Brown v. Brown*, 530 S.W.3d 35, 41 (Mo. App. E.D. 2017); *see also Burgan v. Newman*, 618 S.W.3d 712, 714 (Mo. App. E.D. 2021).

## A. Dismissal of Certain Counts in Employees' Second Amended Petition

### Standard of Review

This Court reviews the trial court's grant of a motion to dismiss *de novo*. *Mo. Bond Co., LLC v. Devore*, 641 S.W.3d 397, 402 (Mo. App. E.D. 2022). "[W]e may affirm the trial court's dismissal on any ground before the trial court in the motion to dismiss, even if the trial court relied on other grounds in dismissing the claim." *Id.* (quoting *Willits v. Peabody Coal Co.*, *LLC*, 400 S.W.3d 442, 448 (Mo. App. E.D. 2013)).

### Discussion

*Point I: Class Action Certification*

In Point I, Employees argue the trial court erred in dismissing the portion of Count III of their Second Amended Petition seeking to certify a class action. Employees concede the Refund Statute does not authorize class actions, but nonetheless insist the "current interpretation of the Refund Statute outlawing class actions is incorrect and should be reexamined."

The Refund Statute, in pertinent part, states:

> Every taxpayer protesting the payment of current taxes under subsection 1 of this section shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court of the county in which the collector maintains his office.

§ 139.031.2.

Employees' point on appeal does not assert a claim of error, but rather, requests this Court to review and overturn controlling precedent. This Court declines Employees' invitation to do so. "[A] claim that the Missouri Supreme Court has incorrectly decided a previous case or cases is not cognizable in the Missouri Court of Appeals." *John Doe B.P. v. Cath. Diocese of Kan. City-St. Joseph*, 432 S.W.3d 213, 219 (Mo. App. W.D. 2014) (quoting *Independence-Nat. Educ. Ass'n v. Indep. Sch. Dist.,* 162 S.W.3d 18, 21 (Mo. App. W.D. 2005)). The question of whether the Refund

Statute authorizes class actions has been considered by the Missouri Supreme Court in *Lane v. Lensmeyer*, 158 S.W.3d 218, 222 n.7 (Mo. banc 2005). There, the Supreme Court expressly found that "nothing in [§] 139.031 authorizes class refunds." *Id.* Most recently, this Court followed this established precedent in *Blankenship* holding "[§] 139.031, construed strictly, does not authorize class refunds but only refunds for individual taxpayers who follow its procedures." *Blankenship v. Franklin Cnty. Collector*, 619 S.W.3d 491, 512 (Mo. App. E.D. 2021).

"As such, we are constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court, and inquiries questioning the correctness of such a decision are improper." *Cath. Diocese of Kansas City-St. Joseph*, 432 S.W.3d at 219 (quoting *Doe v. Roman Cath. Diocese of St. Louis,* 311 S.W.3d 818, 822 (Mo. App. E.D. 2010)). Until the Missouri Supreme Court declares differently, *Lane* constitutes controlling law in Missouri, and this Court is constitutionally without authority to overrule that decision. *See Doe*, 311 S.W.3d at 824. Since the Refund Statute does not authorize *class* refunds, the trial court did not err in denying the portion of Count III of Employees' Second Amended Petition seeking class action certification.

Point I is denied.

*Points II–V: § 1983 Class Action Certification Counts*

Employees' Points II–V challenge the dismissal of Counts IV, V, VI, and VII of the Second Amended Petition, in which Employees sought class action certification for claims brought under § 1983. Each count alleged a different violation of Employees' constitutional rights. We will address all of these points together because they can be resolved on the same legal ground.

Again, Employees have raised an issue that has been directly decided by the Missouri Supreme Court. In *Stufflebaum v. Panethiere*, 691 S.W.2d 271, 272 (Mo. banc 1985), the Supreme Court affirmed the dismissal of an action brought under § 1983 and held that "given a plain,

16

adequate and complete remedy at law (§ 139.031, *supra*), taxpayers may not seek relief under § 1983…." *See also Pac-One, Inc. v. Daly*, 37 S.W.3d 278, 281 (Mo. App. E.D. 2000) ("Section 139.031 provides the taxpayer with an exclusive remedy, and therefore, failure to strictly comply with this section bars recovery of the controverted taxes."). Because § 139.031 provides Employees with an adequate remedy, which is to obtain refunds for the earnings tax they paid, Employees may not bring an action in state court under § 1983 to redress the allegedly unconstitutional imposition of the earnings tax. Therefore, the trial court did not err in denying Employees' claims brought under § 1983.

Points II–V are denied.

## B. Partial Grant of Summary Judgment on Count IX in Collectors' Favor

### Standard of Review

This Court reviews the trial court's grant of summary judgment *de novo. Lisle*, 667 S.W.3d at 103. In reviewing a grant of summary judgment, this Court "may affirm the trial court on any ground as a matter of law, even if not one relied on by the trial court." *Jerseyville Mall, L.L.C. v. Shop 'N Save Warehouse Foods, Inc.*, 633 S.W.3d 523, 528 (Mo. App. E.D. 2021).

*Point VI: Hancock Amendment*

In Point VI, Employees contend the trial court erred in granting summary judgment on Count IX requesting relief under the Hancock Amendment in Collectors' favor. Employees argue the trial court erred in finding the Hancock Amendment only applies to legislative action.[16]

---

[16] Employees also contend that even if the Hancock Amendment only applies to legislative action, Collectors engaged in quasi-legislative action when they unilaterally changed the law and taxed remote work. Lastly, Employees argue the Hancock Amendment should be interpreted to keep taxation in check. These arguments were not made or raised before the trial court and are presented for the first time on appeal. "Arguments not raised before the trial court . . . are not preserved for review on appeal because [w]e will not convict a trial court of error on an issue that was not put before the trial court to decide." *Stanton v. City of Skidmore*, 620 S.W.3d 245, 250 (Mo. App. W.D. 2021) (quoting *Bartsch v. BMC Farms, LLC*, 573 S.W.3d 737, 743 (Mo. App. W.D. 2019)). Thus, this Court will not address these unpreserved arguments.

Specifically, Employees contend by refusing to pay refunds for remote work days, Collectors have

taxed what was untaxed before, and thereby broadened the definition of the base.

> The Hancock Amendment was approved by Missouri voters in 1980 and is aimed at erecting a comprehensive, constitutionally-rooted shield to protect taxpayers from [the] government's ability to increase the tax burden above that borne by the taxpayers on November 4, 1980. The Hancock Amendment is intended as a tax and spending lid for state government, as its purpose is to limit taxes by establishing tax and revenue limits and expenditure limits for the state and other political subdivisions which may not be exceeded without voter approval.

*Blankenship*, 619 S.W.3d at 502 (internal citations and quotation marks omitted).

> Section 22(a) of the Hancock Amendment, in pertinent part, states:

> Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. If the definition of the base of an existing tax, license or fees, is broadened, the maximum authorized current levy of taxation on the new base in each county or other political subdivision shall be reduced to yield the same estimated gross revenue as on the prior base.

Mo. Const. art. X, sec 22(a).

This Court first addresses Employees' argument Collectors imposed a new tax or expanded

the one percent tax. Section 22(a) does not define the term "levy." But, "the Missouri Supreme

Court has defined a tax 'levy' as a legislative declaration that a tax of a certain amount, or a certain

*percentage on value*, shall be imposed on persons and property subject thereto." *Blankenship*, 619

S.W.3d at 503 (emphasis in original) (quoting *State ex rel. Indus. Servs. Contractors, Inc. v. Cnty.*

*Comm'n of Johnson Cnty.,* 918 S.W.2d 252, 256 (Mo. banc 1996)).  Section 22(a)'s plain language

indicates "the Hancock Amendment is violated when the current levy, or rate, of a tax exceeds the

actual levy in effect when the Hancock Amendment was adopted or last approved by the voters."

*Id.* (citing Mo. Const. art. X, sec. 22(a)). Here, the levy of one percent on earnings has not increased

or changed since the Ordinance was enacted. As a result, Employees' argument Collectors violated the Hancock Amendment by creating a new tax or expanding the tax levy has no merit.

As to Employees' argument Collectors allegedly broadened the definition of the base, although a novel argument, is equally unpersuasive. The phrase "base of an existing tax" has been construed by the Missouri Supreme Court as "that property against which the law allows a government to levy a tax." *Tannenbaum v. City of Richmond Heights*, 704 S.W.2d 227, 229 (Mo. banc 1986). The Supreme Court clarified, "[a] broadening of the definition of the base of an existing tax, thus, would necessarily involve the inclusion of *new* types of property, not previously taxed, within the tax base and against which a tax could be levied." *Id*. (emphasis in original). Simply put, the earnings tax was applicable to one type of property since its effective date: earnings. Employees confuse the *imposition* of a tax with the *assessment* of a tax and, in turn, misconstrue the real issue. The question is not whether the base was broadened to now tax a new property (i.e., tax remote work), but whether Collectors inappropriately assessed the earnings tax to earnings from remote work. Therefore, this Court holds Collectors' assessment of earnings tax to remote work, while improperly done, *see supra*, does not violate the Hancock Amendment.[17]

Point VI is denied.

### C.  Motion for Attorneys' Fees

### Standard of Review

"Where the award of attorneys' fees is not mandatory, the granting or refusal to grant attorneys' fees by the trial judge is primarily discretionary and will not be disturbed absent the showing of an abuse of discretion." *Wilson v. Trusley*, 624 S.W.3d 385, 405 (Mo. App. W.D. 2021)

---

[17] While Employees' point on appeal takes issue with the portion of the trial court's ruling finding the broadening of the definition of the base of an existing tax must be done by legislative function to violate the Hancock Amendment, this Court does not reach that issue as it has the discretion to affirm this point on any ground as a matter of law. *See Jerseyville Mall, L.L.C.*, 633 S.W.3d at 528.

(quoting *Tupper v. City of St. Louis*, 468 S.W.3d 360, 374 (Mo. banc 2015)). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Howard v. City of Kansas City*, 332 S.W.3d 772, 792 (Mo. banc 2011) (quoting *Russell v. Russell*, 210 S.W.3d 191, 199 (Mo. banc 2007)).

*Point VII: Motion for Attorneys' Fees*

In Point VII, Employees appeal the denial of their motion for attorneys' fees. The trial court found: (1) Employees failed to support their position that the City's sovereign immunity regarding attorneys' fees had been waived; and (2) Employees failed to demonstrate this case involved "special circumstances" warranting attorneys' fees under the American Rule. Employees only appeal whether they are entitled to attorneys' fees under the special-circumstances exception to the American Rule, and also contend attorneys' fees are proper if their first six points on appeal are granted.[18]

"Missouri has adopted the 'American Rule,' which provides that litigants are generally required to bear the expense of their own attorney[s'] fees . . . absent statutory authorization or contractual agreement." *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo. App. W.D. 2002). This rule is subject to several exceptions, one of them being applied to cases involving

---

[18] Employees also rely on the balancing-of-the-benefits exception to the American Rule. *See State ex rel. Vescovo v. Clay Cnty.*, 589 S.W.3d 575, 590 (Mo. App. W.D. 2019) (explaining, "[i]n regards to unusual circumstances where equity demands a 'balance of the benefits,' this exception to the American Rule is grounded in two doctrines: the common fund doctrine and the common benefit doctrine."). However, Employees simply intertwine this exception argument with their special-circumstances argument, which is not sufficient for this Court's review. "[T]he function of an appellate court is not to serve as an advocate for the parties on appeal, and this Court must carefully safeguard its role as a neutral adjudicator." *Hamilton v. Archer*, 545 S.W.3d 377, 381 (Mo. App. E.D. 2018). "Addressing arguments that a party did not sufficiently develop, 'would run the risk of creating poor precedent and manipulating the adversarial process.'" *Id.* (quoting *Rodieck v. Rodieck*, 265 S.W.3d 377, 385 (Mo. App. W.D. 2008)).

20

"special circumstances." *Davis v. Johnson Controls, Inc.*, 549 S.W.3d 32, 40 (Mo. App. E.D. 2018). To demonstrate "special circumstances" to justify an attorneys' fee award, a party must engage in conduct that is "frivolous, without substantial legal grounds, reckless or punitive[,]" or commit "intentional misconduct." *State ex rel. Vescovo v. Clay Cnty.*, 589 S.W.3d at 589 (Mo. App. W.D. 2019) (first quoting *Goines v Mo. Dep't of Soc. Servs.,* 364 S.W.3d 684, 688 (Mo. App. W.D. 2012) (then quoting *Klinkerfuss v. Cronin,* 289 S.W.3d 607, 619 (Mo. App. E.D. 2009)). "Correctly interpreted, the 'special circumstances' exception to the American Rule is narrow and must be strictly applied." *DCW Enters., Inc. v. Terre du Lac Ass'n, Inc.*, 953 S.W.2d 127, 132 (Mo. App. E.D. 1997) (quoting *Washington Univ. v. Royal Crown Bottling Co. of St. Louis*, 801 S.W.2d 458, 469 (Mo. App. E.D. 1990)). "[This Court] cannot emphasize enough just how limited the fact situations are which support a finding of special circumstances." *Vescovo,* 589 S.W.3d at 590.

To support their argument, Employees point to the trial court's January 19, 2023 judgment, which provided:

> [I]t seems the [City Tax] Collector unilaterally altered the criteria for the refunds without pursuing any kind of formal rule-making process or any amendments to the existing Earnings Tax … [O]rdinance. While [Collectors] contend they always had the power to collect the Earnings Tax from teleworkers, they just never exercised it until recently, the court finds that untrue given the analysis of the Earnings Tax above. Moreover, it strains credibility to think [Collectors] always believed they were entitled to more tax dollars but just decided for reasons unknown not to attempt to collect them.

Employees, however, fail to cite any authority and develop an argument to demonstrate why the trial court's statement supports an award of attorneys' fees. The special-circumstances exception has been confined to very limited fact situations, *see DCW Enterprises, Inc.*, 953 S.W.2d at 132, and these statements alone do not support Employees' attorneys' fee claim based on special-circumstances. In fact, the trial court's final judgment clarified that nothing in its January

21

19, 2023 ruling permitted attorneys' fees nor did it find that "[Collectors'] conduct was intentionally spiteful, fraudulent, or egregious to warrant any exception to the American Rule." Thus, this Court holds Employees are not entitled to attorneys' fees under the special-circumstances exception.

Lastly, because this Court denies Employees' Points I–V related to the class action certification and Point VI concerning the alleged Hancock Amendment violation, Employees are also not entitled to an award of attorneys' fees for those claims.

Therefore, the trial court did not err in denying Employees' motion for attorneys' fees.

Point VII is denied.

### D. Motion for Attorneys' Fees on Appeal

Employees filed a motion for attorneys' fees on appeal and this Court elected to take the motion with the case. Employees' arguments are without merit. Therefore, the Employees' motion for attorneys' fees on appeal is denied.

### Conclusion

The trial court's judgment is affirmed.

_____
Michael S. Wright, Judge

Robert M. Clayton III, P.J. and
Philip M. Hess, J., concur.